UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA LORENZ, *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>M. SHEPARD, *et al.*,<br><br>  Defendants. | Case No. 1:23-cv-00604-JLT-EPG<br><br>SCREENING ORDER<br><br>ORDER FOR PLAINTIFFS TO:<br><br>(1) FILE A FIRST AMENDED COMPLAINT; OR<br><br>(2) NOTIFY THE COURT THAT THEY WISH TO STAND ON THEIR COMPLAINT, SUBJECT TO THE COURT ISSUING FINDINGS AND RECOMMENDATIONS TO A DISTRICT JUDGE CONSISTENT WITH THIS ORDER<br><br>(ECF No. 1)<br><br>THIRTY (30) DAY DEADLINE |

Plaintiffs Alicia Lorenz and Patrick Lorenz, Sr. ("Plaintiffs" or "Ms. Lorenz" and "Mr. Lorenz") proceed *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. (ECF No. 1). On April 19, 2023, Plaintiffs filed a complaint alleging constitutional claims against M. Shepard, a lieutenant at California State Prison—Corcoran

1

("CSP—Corcoran"), the Warden of CSP-Corcoran[1], and the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiffs generally allege that their constitutional rights were violated when Lieutenant Shepard called Ms. Lorenz's cell phone regarding Plaintiff's son, Patrick Lorenz Jr. ("Patrick Jr."), who was incarcerated at CSP-Corcoran at the time of the phone call, but failed to answer on the call whether Patrick Jr. was dead.

The Court finds that Plaintiffs' complaint fails to state any cognizable claims. After Plaintiffs review this order, Plaintiffs can decide to file an amended complaint, which the Court will screen in due course. Plaintiffs can also notify the Court that they want to stand on their complaint, in which case this Court will issue findings and recommendations to the district judge assigned to the case recommending that Plaintiffs' complaint be dismissed for the reasons in this order. If Plaintiffs do not file anything, the Court will recommend that the case be dismissed.

## I.    SCREENING REQUIREMENT

As Plaintiffs proceed *in forma pauperis*, the Court screens the complaint under 28 U.S.C. § 1915. (ECF No. 5). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

---

[1] Plaintiffs identify the second defendant as John Doe #1 who is employed as the Warden of CSP-Corcoran. (ECF No. 1, p. 2).

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.     SUMMARY OF PLAINTIFFS' COMPLAINT

Plaintiffs' complaint alleges as follows:

On October 16, 202, at approximately 10:15 p.m., the Plaintiffs were awakened by an incoming phone call. Upon answering the phone call, Mr. Lorenz heard the voice of a male caller who identified himself as Lieutenant Shepard from CSP-Corcoran. Upon realizing that the call was coming from the prison, Mr. Lorenz clutched his chest and went numb with fear and shock (thinking that the call was to inform him that his son, Patrick Jr., was dead), and handed the phone to his wife, Ms. Lorenz. Ms. Lorenz immediately asked the caller, "Is my baby boy dead?" (*Id.*, p. 3).

Rather than answer her question, Lieutenant Shepard proceeded to tell Ms. Lorenz that her son had been in a physical altercation resulting in serious bodily injury. This information left Ms. Lorenz feeling shaken and distraught. Before Ms. Lorenz could utter a single word, Lieutenant Shepard asked the Plaintiff if her son had a propensity for violent behavior. Instead of answering Lieutenant Shepard's question, the Plaintiff asked again if her son was alright, to which Lieutenant Shepard responded, "I am not at liberty to give out that information." Ms. Lorenz then asked why Lieutenant Shepard was calling. There was a 10 to 15 second pause and then Lieutenant Shepard proceeded to hang up the phone. (*Id.*, pp. 3-4).

Plaintiffs were left in a state of distress and confusion following the lieutenant's call. The phone call lasted for a minute and thirty seconds and came from an extension at CSP—Corcoran. Plaintiffs went from a state of peaceful slumber to a state of anxiety as a direct result of that short phone call. Plaintiffs contend that the purpose of Lieutenants Shepard's call was to inflict emotional distress. Plaintiffs allege that the other purpose of the call was to send a message to Plaintiffs and their son, Patrick Jr., who is housed at CSP—Corcoran, and to discourage them from speaking out about excessive force suffered by their son at the hands of prison officers at CSP-Corcoran. (*Id.*, p. 4).

Plaintiffs allege that Lieutenant Shepard's own admission during the phone call indicates that he did not have authority to pass along any information to Plaintiffs. Plaintiffs contend that this admission begs the question of why Lieutenant Shepard made the phone call in the first place. Plaintiffs allege that the lieutenant's intentions were nefarious in nature and meant to inflict emotional trauma. Because while it is true that Plaintiffs are listed as their son's emergency contact, per CDCR guidelines, those contacts are only to be notified in the event of a death or an emergency requiring the use of life-support devices. Given that Plaintiffs' son was involved in a fist fight that resulted in nothing more than a broken arm, there was no justification for the lieutenant's phone call. (*Id.*, p. 5).

In fact, Plaintiffs further allege that their son's arm was broken when a control officer, P. Movey, fired a 37mm block gun at Patrick Jr. when he was lying down and the fight was over. Plaintiff also allege that Officer Movey violated CDCR policy by failing to ricochet the shot and aiming at Patrick Jr.'s upper torso. Because their son's injury was the direct result of an excessive use of force, Plaintiffs allege that the phone call from Lieutenant Shepard looks like an attempt to cover-up the facts regarding the use of force by Officer Movey. Plaintiffs did not learn that their son was alright for nearly 36 hours following the lieutenant's phone call, which means that Plaintiffs suffered not knowing the status of their son for that entire time. (*Id.*)

In addition to the incident described above, Plaintiffs allege that Lieutenant Shepard's phone call was made to Ms. Lorenz's cell phone number, under the guise of being an emergency contact phone call. However, Plaintiffs allege that this phone call was improper for two reasons. First, based on CDCR's guidelines and policies, an emergency contact phone call should only be made in the case of a death or an emergency necessitating the use of life support devices. Patrick Jr.'s situation did not meet the criteria for an emergency phone call. Second, Plaintiffs never gave Ms. Lorenz's cell phone number to prison officials nor was this phone number listed as Patrick Jr.'s emergency phone contact. At that point in time, there was an entirely different phone number listed on Patrick Jr.'s emergency contact list. (*Id.*, pp. 7-8).

Plaintiffs allege that Lieutenant Shephard either came across this phone number by searching Patrick Jr.'s outgoing calls from the prison or searching Patrick Jr.'s personal property. (*Id.*, p. 8). Elsewhere in Plaintiffs' complaint, Plaintiffs allege that Lieutenant Shepard obtained

this phone number "via under handed tactics." (*Id.*, p. 11). Regardless of how Lieutenant Shepard obtained Ms. Lorenz's cell phone number, he had no authorization to contact Plaintiffs at this number. Accordingly, Lieutenant Shepard violated CDCR policy in two ways. First, Lieutenant Shepard abused the emergency contact protocols for his own agenda, namely, to inflict emotional distress/trauma on Plaintiffs. Second, Lieutenant Shepard violated CDCR policy by utilizing information that neither provided to CDCR nor authorized for use by CDCR officials. (*Id.*, p. 8).

Plaintiffs allege that Lieutenant Shepard's supervisors, namely the Warden of CSP-Corcoran and CDCR, should be held accountable for Lieutenant Shepard's actions. Plaintiffs allege that CDCR has a history of "turning a blind eye" to employee misconduct, as demonstrated by the nonchalant way in which Lieutenant Shepard spoke to Plaintiffs during the phone call and which indicates that Lieutenant Shepard did not fear any reprisal. (*Id.*, p. 11).

Plaintiffs allege 3 claims, all purportedly under the Eighth Amendment right to be free from cruel and unusual punishment. Claim one specifically states the issue is retaliation, claims 2 is retaliation, and claim 3 is deliberate indifference. Plaintiffs allege that Defendants' actions have caused emotional distress, trauma resulting in anxiety, stress, panic attacks, sleeplessness, blatant harassment, and fear of retaliation. (*See id.*, pp. 6, 9, 12). Plaintiffs also allege that Mr. Lorenz already suffers from a heart condition. (*Id.*, p. 6). Plaintiffs seek monetary compensation and punitive damages from Defendants in their official and individual capacities. (*Id.*, p. 13)

## III.  ANALYSIS OF PLAINTIFFS' COMPLAINT

### A.  Standards for Section 1983 Claims

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir.

2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. Of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. Of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

**B. Eighth Amendment Claims**

Plaintiffs bring three claims purportedly based on the Eighth Amendment, which prohibits "cruel and unusual punishments." However, Plaintiffs are not prisoners, so this clause does not apply to them or this situation.

The Eighth Amendment protects individuals convicted of crimes from punishment that is cruel and unusual.[2] *Ingraham v. Wright*, 430 U.S. 651, 667-68 (1977) (the Eighth Amendment

---

[2] Plaintiffs' complaint alleges that Plaintiffs' son, Patrick Jr., is, or was at the time of filing, a state prisoner. However, Patrick Jr. is not a plaintiff in the complaint and the complaint does not bring claims based on any injury to him. Moreover, although Plaintiffs may represent themselves, they cannot represent

6

does not apply to allegations of conduct constituting "cruel and unusual punishment" outside the criminal process); *Gary H. v. Hegstrom*, 831 F.2d 1430, 1432 (9th Cir. 1987) (the Eighth Amendment applies to "convicted prisoners").

Here, Plaintiffs were not prisoners and were not subject to criminal punishment. Thus, the Court finds that the complaint fails to state any constitutional claims under the Eighth Amendment.

### C.     Fourth Amendment Claims

In claim 2, Plaintiffs also state that Defendants violated Plaintiffs' right to be free from unreasonable searches and seizures as well as invasion of privacy.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." The purpose of the amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Carpenter v. United States*, 138 S.Ct. 2206, 2213 (2018) (quoting *Camera v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 528 (1967)).

Here, Plaintiffs allege that their Fourth Amendment rights were violated when Lieutenant Shepard improperly obtained Ms. Lorenz's phone number and called her on the phone. Plaintiffs' allegations do not describe a search or seizure. To the extent Plaintiffs allege that Lieutenant Shepard must have conducted an illegal search to obtain the phone number, (and putting aside whether such allegations are conclusory and speculative), such an alleged search does not involve Plaintiffs' own property. There are no allegations that Plaintiffs' own property was illegally searched or seized. Plaintiffs merely speculate that Defendants must have searched their son's property to obtain their number. However, Plaintiffs cannot bring such a claim on behalf of their son.

Plaintiffs thus fail to state a Fourth Amendment constitutional claim.

//

//

---

their son *pro se*. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) ("It is well established that the privilege to represent oneself *pro se* provided by [28 U.S.C. § 1654 (the federal statute providing that "parties may plead and conduct their own cases personally or by counsel")] is personal to the litigant and does not extend to other parties or entities.").

### D.     Retaliation

Plaintiffs also list retaliation as an issue related to Claim 1. There are three elements to a First Amendment retaliation claim:

> [A] plaintiff must show that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct.

*O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)).

Here, Plaintiffs do not allege they were engaged in a constitutionally protected activity, not to mention that the call was made to retaliate against them for any such activity. Plaintiffs allege that the phone call "was to send a message to both of them and their son . . . about speaking out about excessive force suffered by their son at the hands of prison officers at CSP-Corcoran." (ECF No. 1 at p. 4). But this allegation does not state a claim for retaliation under the First Amendment because it does not allege that Plaintiffs had engaged in constitutionally protected activity. Moreover, there are no allegations that, even if true, would establish that the call was substantially motivated by Plaintiffs' previous, constitutionally protected, activity. *See Arizona Students' Association v. Board of Regents*, 824 F.3d 858, 870 (9th Cir. 2016) ("At the pleading stage a plaintiff adequately asserts First Amendment retaliation if the complaint alleges plausible circumstances connecting the defendant's retaliatory intent to the suppressive conduct.") (citing *O'Brien*, 818 F.3d at 993-34, 935).

### E.     Sovereign Immunity

In addition to the issues raised above, the Court also notes that the CDCR specifically is entitled to sovereign immunity.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Indeed, the Eleventh Amendment prohibits federal courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override . . . ." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an

arm of the state,' its instrumentalities, or its agencies." *See Fireman's Fund Ins. Co. v. City of Lodi, Cal.,* 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), *cert. denied*, 538 U.S. 961 (2003). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court . . . ." *Dittman*, 191 F.3d at 1025-26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Brown v. Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity).

Here, Plaintiffs name the California Department of Corrections and Rehabilitation ("CDCR") as one of the defendants. However, the CDCR is not a proper defendant. It is a state agency, and thus Plaintiffs' claims against the CDCR are barred by sovereign immunity.

### F. Supervisory Liability

Additionally, Plaintiffs' claims against the Warden do not state a section 1983 claim because there is no supervisory liability under section 1983.

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

Here, Plaintiffs' complaint alleges that the Warden should be held accountable for Lieutenant Shepard's actions because of the Warden's supervisory position. Such allegations are insufficient to establish liability over a supervisor. *Sullivan v. Biter*, 2017 WL 1540256, at *1 (E.D. Cal. Apr. 28, 2017) ("Conclusory allegations that various prison officials knew or should have known about constitutional violations occurring against plaintiff simply because of their general supervisory role are insufficient to state a claim under 42 U.S.C. § 1983.").

Thus, the Court finds that the complaint fails to state a claim against the Warden of Corcoran State Prison for any constitutional violation on the basis of supervisory liability.

## IV.     CONCLUSION AND ORDER

The Court finds that Plaintiffs' complaint fails to state any cognizable claims.[3]

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "the court should freely give leave [to amend] when justice so requires." Accordingly, the Court will provide Plaintiffs with time to file an amended complaint curing the deficiencies identified above. *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Plaintiffs are granted leave to file an amended complaint within thirty days.

If Plaintiffs choose to file an amended complaint, the amended complaint must allege violations under the law as discussed above. Plaintiffs should note that although they have been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiffs are advised that an amended complaint supersedes the original complaint, *Lacey v. Maricopa County*, 693 F.3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and must be complete in itself without reference to the prior or superseded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

---

[3] The Court has only analyzed the constitutional claims asserted by Plaintiffs. The Court has not evaluated any state law claims that could apply, if any. Plaintiffs have not asserted any state law claims. Moreover, without a federal claim, this Court would lack jurisdiction over state law claims.

Alternatively, Plaintiffs may choose to stand on this complaint, in which case the Court will issue findings and recommendations to the district judge recommending dismissal of the action consistent with this order.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk of Court is directed to send Plaintiffs a § 1983 civil rights complaint form;
2. Within thirty (30) days from the date of service of this order, Plaintiff shall either:
    a. File a First Amended Complaint; or
    b. Notify the Court in writing that they wish to stand on their complaint.
3. Should Plaintiff choose to amend their complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:23-cv-00604-JLT-EPG; and
4. Failure to comply with this order may result in the dismissal of this action.

IT IS SO ORDERED.

Dated:  **October 12, 2023**                    /s/ Erica P. Grosjean
                                                UNITED STATES MAGISTRATE JUDGE